UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STACEY MARTIN o/b/o L.C.M., | CASE NO. 1:18CV1852 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Stacey Martin ("Plaintiff"), acting on behalf of her daughter, L.C.M., a minor child ("Claimant"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. In her merits brief, filed on November 27, 2018, Plaintiff asserted that the Administrative Law Judge ("ALJ") erred: (1) when she failed to submit evidence received after the hearing to the medical expert, Dr. Silberberg; and (2) in finding that Claimant did not have marked impairments in at least two of the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, or health and physical well-being. ECF Dkt. #13. On March 13, 2019, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff filed a reply brief on March 27, 2019. ECF Dkt. #17. For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

I. **PROCEDURAL HISTORY**

On September 10, 2015, Plaintiff, acting on behalf of Claimant, filed an application for child's SSI, alleging disability beginning June 1, 2004 due to brain damage, developmental and

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

1

learning disability, and attention deficit hyperactivity disorder ("ADHD"). ECF Dkt. #11 ("Tr.")[2] at 69, 167. The application was denied initially and upon reconsideration. *Id*. at 76, 87, 91. Plaintiff subsequently filed a request for a hearing by an ALJ. *Id*. at 106.

On August 1, 2017, an ALJ conducted an administrative hearing, where Plaintiff and Claimant appeared and were represented by counsel. Tr. at 33-34. At the hearing, the ALJ received testimony from Claimant and Plaintiff, as well as from medical expert ("ME") Dr. William Silberberg[3]. *Id*. at 37-38. On February 5, 2018, the ALJ issued decision denying Plaintiff's claim. *Id*. at 8-27. On June 21, 2018, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-5.

On August 13, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On October 30, 2018, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #12. On November 27, 2018, Plaintiff filed a brief on the merits. ECF Dkt. #13. On March 13, 2019, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff filed a reply brief on March 27, 2019. ECF Dkt. #17.

## II. **STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI**

In order to qualify for childhood SSI benefits, Claimant must show that she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child:

(1) is performing substantial gainful activity;

(2) has a "severe" impairment or combination of impairments; and

(3) whether the impairment or combination of impairments are of listing-level

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

[3] The hearing transcript misspells Dr. Silberberg's name as Dr. Silverberg.

severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").

20 C.F.R. § 416.924(a)-(d). In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.925(d) (emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of Listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) (emphasis added). The Commissioner assesses all relevant factors, including:

(1) how well the child initiates and sustains activities, how much extra help she needs, and the effects of structured or supportive settings;

(2) how the child functions in school; and

(3) how the child is affected by her medications or other treatment.

*See* 20 C.F.R. § 416.926a(a)(1)-(3). Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). The Commissioner considers how a child's functioning is affected during her activities at home, school and in her community in terms of six domains:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Social Security Act's duration

3

requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

III. **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found a claimant disabled.

The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

IV. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ indicated that Claimant was an adolescent on September 10, 2015, the date the application was filed, and through the date of the decision. Tr. at 14. The ALJ found that Claimant had not engaged in substantial gainful activity since the application date. *Id.* She found that Plaintiff had the severe impairments of history of traumatic brain injury, vertigo, migraine headaches and seizure disorder/staring spells. *Id.* In addition, she found that Claimant had the non-severe impairments of a history of sleepwalking and a history of adverse reaction to "Abilify." *Id.* She further found that Claimant did not have a severe impairment or combination of impairments that met or medically equaled the severity of one any of those in the Listings. *Id.* at 15. The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the Listings and considered each of the six domains. *Id.* at 16-27. The ALJ concluded that Claimant was not disabled since September 10, 2015, the date the application was filed. *Id.* at 27.

V. **ANALYSIS**

   A. **ALJ'S DECISION NOT TO SUBMIT POST-HEARING EVIDENCE TO MEDICAL EXPERT**

Plaintiff's first contention is that the ALJ committed reversible error when she failed to proffer medical evidence received subsequent to the hearing to the ME, Dr. Silberberg. ECF Dkt. #13 at 10-11. Specifically, Plaintiff states that these records, which consisted of counseling notes, school records, and records from University Hospital, were obtained at the request of the ME, and the ALJ did not indicate that she would not submit the records to Dr. Silberberg for his review and comments. *Id.* at 10; ECF Dkt. #17 at 2; *see* Tr. at 32, 603-76. Plaintiff avers that the ALJ did not adhere to the procedures set forth in the Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-5-45. ECF Dkt. #13 at 10-11.

HALLEX I-2-5-45 deals with the procedure for when an ALJ receives new evidence after a ME has provided an opinion. HALLEX I-2-5-45, 1994 WL 637378 (2014). In relevant part

HALLEX I-2-5-45 states the following:

> When an ALJ receives new evidence after an ME has provided testimony or responded to interrogatories, the ALJ *may* ask the ME to review the new evidence to determine if it affects the ME's testimony or response.

*Id.* (emphasis added). This provision contains discretionary language and does not obligate an ALJ to submit new evidence to a ME after a hearing. *See Williams v. Comm'r of Soc. Sec.*, No. 15 Civ. 7526 (ER) (SN), 2017 WL 1483545, at *3 (S.D.N.Y. Apr. 25, 2017). In addition, the Sixth Circuit has recognized that HALLEX is not binding legal authority, but rather it provides helpful "procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals." *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *see also* HALLEX I-1-0-1, 2005 WL 1863821 (2005) (noting that HALLEX "conveys guiding principles, procedural guidance, and information").

SSR 96-6p governs the need for updated medical expert opinions. SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 2996). The Sixth Circuit has found that an update is required when either:

> (1) there is evidence of symptoms, signs and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to the listings; or
> (2) when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment does not equal the listings.

*Kelly v. Comm'r of Soc. Sec.*, 314 Fed.Appx. 827, 830 (6th Cir. 2009) (holding that two new teachers' reports did not trigger a need for an updated medical expert opinion). The *Kelly* court also placed the burden on the Plaintiff "to show that there is evidence calling for an updated medical opinion." *Id.* Here, Plaintiff failed to meet that burden. Plaintiff does not cite to mandatory authority requiring an ALJ to submit post-hearing evidence to a medical expert for review, nor does she argue either of the circumstances noted above apply in the instant case. *See* ECF Dkt. #13; ECF Dkt. #17.

The ALJ afforded significant weight to the opinion of the ME, Dr. Silberberg, because it was consistent with, and supported by, the evidence of record. Tr. at 19. She stated that Dr. Silberberg had the opportunity to review Claimant's records, to which he cited liberally in arriving at his conclusions. *Id.* That ALJ also pointed out that Dr. Silberberg has provided long service as a ME for the SSA, such that he is familiar with the analytical framework employed in these types of cases.

*Id.*

During the August 1, 2017 hearing before the ALJ, Dr. Silberberg testified as to his opinions regarding Claimant. *See tr.* at 41-60. He stated that he did not have good performance records available to him and that made it difficult for him to render his functional evaluations. *See id.* at 47, 49. He stated that he can offer an opinion, but he does not know the ultimate answer as to how severe Claimant's problems are because it is difficult to determine from the available written medical evidence. *Id.* at 52, 59. Dr. Silberberg stated that he would like to see a teacher evaluation, but he also stated that "I never use that as the primary basis for making my decision but as an ancillary one that's very helpful to me." *Id.* at 49-50. Subsequently, Plaintiff's attorney, Plaintiff, the ME, and the ALJ had a discussion about getting further information from teachers after the hearing, but Plaintiff remarked that she had been told that teachers were not allowed to fill out teacher evaluations. *Id.* at 50-51. Plaintiff's attorney reasoned that school systems were afraid of litigation if teachers complete such forms and the ALJ speculated that schools may also be disincentivized to accommodate students because Individualized Education Programs ("IEPs") are expensive. *Id.* The ALJ later asked the ME if he could infer from the fact that Claimant is in an IEP group of 6 students whether or not she has significant problems. *Id.* at 52. To this, Dr. Silberberg responded that he could not extrapolate to reach a conclusion of disability without the appropriate evidence. *Id.*

The ALJ stated that she did not have a problem with attempting to get the additional information, including hospitalization notes from University Hospitals ("UH"), Claimant's test results, and teacher evaluations. Tr. at 58-60. Near the end of the ME's testimony, the ALJ noted that she would probably do a threshold sort of test and that she would hold another hearing with Dr. Silberberg if she felt that it would be necessary. *Id.* at 60. She further stated that if she did not find that the threshold test met or if she felt that there was already enough evidence that was available, then she probably would not hold another hearing[4]. *Id.*

---

[4] The transcript shows that ALJ's last sentence is cut off, but the logical inference is that she would not hold another hearing if the threshold test is not met. Ultimately, the ALJ never conducted a second hearing.

7

After the hearing before the ALJ, Plaintiff entered three additional exhibits into evidence. *See* tr. at 32, 603-76. Exhibit 24F contains progress notes from Alternative Paths, a counseling center, dated July 12, 2017 to August 1, 2017. *Id.* at 603-09. These counseling sessions focused on managing her thoughts, feelings, and behaviors, particularly anger. *Id.* Exhibit 25F contains information dated August 13, 2013 to May 15, 2017 about Claimant's IEP dated May 11, 2017, her transcript from several grades, her Ohio Achievement Assessment test scores from grades 3 and 4, her attendance record from 2016 to 2017, and an Evaluation Team Report ("ETR") dated September 23, 2015. *Id.* at 611-65. Exhibit 26F consists of outpatient hospital records dated September 29, 2016 to November 1, 2016 from UH. *Id.* at 667-76. These records contain one visit where Claimant complained of migraine headaches and her subsequent examination and treatment, as well as various test results. *Id.*

Nowhere in her decision did the ALJ cite to any of these three exhibits although they were listed as exhibits in the record. *See* tr. at 8-27, 32. However, Plaintiff has not demonstrated why these three additional exhibits are important or how the ME's opinion would have been different had they been available. *See* ECF Dkt. #13 at 10-11. Importantly, the ME only explicitly requested additional teacher questionnaires/evaluations to help him better opine on Claimant's performance. *See* tr. at 47, 49-50, 52, 58-60. However, none of the three additional exhibits contain any teacher questionnaires or evaluations. *See* ECF Dkt. #16 at 13; Tr. at 603-76. The ME discussed and considered Claimant's psychological issues and opined that Claimant had several psychological-based diagnoses, consisting of ADHD, a learning disability, a traumatic brain injury, vertigo, migraines, asphasia disorder/staring spells, and a mood disorder. Tr. at 41, 44-46, 53-57. Therefore, since psychological records were already in evidence and the ME did not request further counseling records, Exhibit 24F does not appear to be particularly relevant for the ME in determining performance. Also, later during the hearing, the ALJ asked Plaintiff why Claimant stopped going to see her psychiatrist. *Id.* at 61-62. Plaintiff testified that Claimant had switched psychiatrists because she was concerned Claimant was being over-medicated. *Id.* at 62. The ALJ and Plaintiff's attorney noted that they would update the evidence to include those records. *Id.* at 62, 63-64. Accordingly, the counseling records from Alternative Paths, Exhibit 24F, which were requested by

the ALJ, appear to have the primary purpose of showing that Claimant was still seeing a psychiatrist.

Furthermore, the September 2015 ETR from Exhibit 25F was available to and cited by the ME because it was in a previous exhibit already in the record. *See* tr. at 43 (citing tr. at 448). The Ohio Achievement Assessment results in Exhibit 25F contain test results from when Claimant was in grades 3 and 4. Tr. at 639. However, the ME was able to cite to more recent test results from when she was in the 6th grade. *Id.* at 43 (citing tr. at 449-50, 453-54). Additionally, the information from Exhibit 26F regarding Claimant's migraines was available to the ME before the hearing because they were noted in subsequent UH records already in evidence. Tr. at 528-29, 534-35, 540, 564-65, 569-70, 575, 580. Regardless, the importance of having Exhibit 26F available to the ME likely would not have made any difference because not only did the ME opine that migraines was one of Claimant's diagnoses without this exhibit, but also the ALJ actually found migraines to be a severe impairment. *Id.* at 14.

Accordingly, the Court finds that the ALJ did not commit an error when she did not submit the additional new evidence to the ME, Dr. Silberberg, after the hearing took place. Contrary to Plaintiff's assertion, the regulations do not obligate the ALJ to submit post-hearing evidence to a ME. Additionally, any error would be harmless because Plaintiff has not shown, nor can the Court find, how Plaintiff was prejudiced. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 541 546–47 (6th Cir. 2004) ("An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'") (emphasis added) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir.1983)).

### B. FUNCTIONAL DOMAINS

Plaintiff's second main contention is that the ALJ committed reversible error in finding that Claimant did not have marked impairments in at least two of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) health and physical well-being. ECF Dkt. #13 at 11-15. As stated above, to functionally equal a Listing, a child's impairment(s) must be of Listing-level severity; in other words, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one

domain. 20 C.F.R. § 416.926a(a). In the instant case, the ALJ found no limitation in moving about and manipulating objects and a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being. Tr. at 21-27. Plaintiff stated that the "ALJ either chose to ignore, or she failed to give appropriate weight, to any evidence in the record supporting any findings contrary to her own opinion." ECF Dkt. #13 at 11.

### 1. Acquiring and Using Information

The domain of acquiring and using information concerns how well a child acquires or learns information and how well the child uses the information he or she learned. 20 C.F.R. §416.926a(g); SSR 09-3p, 2009 WL 396025, at *2 (S.S.A. Feb. 17, 2009). In her decision, the ALJ found that Claimant has less than marked limitation in the domain of acquiring of using information. Tr. at 22. She noted that Plaintiff indicated in her function report that Claimant was unable to ask for things she needed, to explain her actions or to repeat stories. *Id.* (citing tr. at 187). Plaintiff also indicated that Claimant was unable to read, follow simple instructions, tell time, and add or subtract numbers. *Id.* (citing tr. at 188). The ALJ further noted that Claimant received special education services throughout her education. *Id.* (citing tr. at 283). On August 27, 2015, Claimant scored very low in the areas of reading and written expression, low in applied mathematics, and low average in calculation on the Woodcock-Johnson Tests of Achievement-Fourth Edition. *Id.* (citing tr. at 449). However, Claimant registered a full-scale IQ score of 88 and a verbal IQ score of 86 when she took the Wechsler Intellectual Scales for Children-Fifth Edition on August 26, 2015. *Id.* (citing tr. at 453). The ALJ acknowledged that Claimant carried a grade point average ("GPA") of 3.20 through the close of middle school, and by mid-2017, she had two "A"s, one "B" and one "B minus" on her report card. *Id.* (citing tr. at 229, 510). The ALJ stated that her finding, "[a]lthough not dispositive of the conclusion," is consistent with testimony of the independent ME, Dr. Silberberg. *Id.* (citing tr. at 33-68).

Plaintiff presents three arguments regarding this domain. First, she asserts that her teachers' observations should have been afforded considerable weight. Next, she claims the ALJ did not follow the "whole child" approach. And finally, she claims that certain adolescent functioning

examples from SSR 09-3p support a finding of a marked limitation. ECF Dkt. #13 at 11-14; ECF Dkt. #17 at 2.

Plaintiff avers that the ALJ should have given more weight to the observations of teachers contained in the IEPs and ETR. ECF Dkt. #13 at 11-12. Plaintiff contends that the ALJ failed to discuss the IEPs and ETR and focused only on Claimant's IQ scores. *Id.* at 12. Specifically, Plaintiff points to the following facts for support: Claimant needed to be in a small group environment with minimal distractions; she had a modified curriculum and numerous classroom accommodations; she demonstrated very low reading skills; she was fired from a job because she did not demonstrate appropriate problem-solving skills; and testing showed that she needed improvement with appropriate conversation, accepting constructive criticism, having a positive work attitude, handling problems, and planning her workload. *Id.* (citing tr. at 450, 509, 512).

Contrary to Plaintiff's assertion, the ALJ did cite to Claimant's September 2015 ETR and February 2017 IEP, which contained her test scores and grades. *See* tr. at 22 (citing tr. at 449, 453, 510). Furthermore, the Sixth Circuit has endorsed supporting a conclusion in a particular step of the ALJ's decision by looking to factual findings elsewhere in that decision. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination). Earlier in her decision, the ALJ cited to Claimant's IEPs and the teacher comments noted within them. *See* tr. at 16. Thus, the ALJ did not fail to discuss Claimant's IEPs or ETR.

Moreover, 20 C.F.R. § 416.927(f) governs opinions from nonmedical sources, which encompasses educational personnel[5]. *See* 20 C.F.R. § 416.913(a) & (d)(2) (effective Sept. 3, 2013);

---

[5] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

SSR 06-03p[6], 2006 WL 2329939, at *3 (S.S.R. Aug. 9, 2006) ("Non-medical sources" who have had contact with a claimant in their professional capacity include teachers.). The factors in 20 C.F.R. § 416.927(c) apply to the consideration of all opinions, including from "other sources," such as teachers, because they represent basic principles regarding how to evaluate opinion evidence. SSR 06-03p, at *4. Although not explicitly addressed in the regulations, an ALJ generally should explain the weight given to opinions from other sources, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case." *Id.* at *4, 6. The Sixth Circuit interpreted this ruling to mean that an ALJ should discuss the 20 C.F.R. § 416.927(c) factors relating to treatment, in order to provide a basis for why the ALJ was rejecting the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'") (citing SSR 06-3p, at *4). However, an ALJ does not need to provide "good reasons" for rejecting the opinions of non-medical sources, including teachers. *See* 20 C.F.R. § 416.927(c)(2) ("good reasons" are only required when an ALJ provides less than controlling weight to a treating source's medical opinion).

The ALJ was not required to discuss particular teachers' opinions because, as Plaintiff admitted, there are no teacher questionnaires or opinions in the record, nor do the regulations require her to address all comments in an IEP or ETR. *See* ECF Dkt. #13 at 12. Plaintiff's argument assumes that the teacher comments contained within the IEPs and ETRs are opinion evidence. Rather, these educational records are more accurately classified as school evidence. *See* SSR 09-3p, at *3. SSR 09-3p considers special education services or related services and other accommodations made for the child as being under the umbrella of school records. *Id.* Further, it states that "[a]lthough we

---

[6] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

consider formal school evidence (such as grades and aptitude and achievement test scores) in determining the severity of a child's limitations in this domain, we do not rely solely on such measures." *Id.* Therefore, IEPs and ETRs are not opinion evidence, but rather are school records that the ALJ considered.

Furthermore, in the middle of her argument regarding the domain of acquiring and using information, Plaintiff recites the "whole child" approach from SSR 09-1p, and stated that the ALJ failed to follow this formula when she evaluated Claimant's severe impairments. In her decision, the ALJ referred to 20 C.F.R. § 416.926a(b)-(c) and SSR 09-1p, noting that she evaluated the "whole child" in making her findings regarding functional equivalence. Tr. at 17. Plaintiff did not expand upon her conclusory allegation or give any reasons, and, therefore, the Court deems it waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citation omitted).

Finally, Plaintiff claims that certain SSR 09-3p supports a finding of a marked limitation. She points out that Claimant considered the future occupations of either a veterinarian or an early childhood teacher, which Plaintiff states are "diversely different occupations." ECF Dkt. #13 at 13 (citing tr. at 614). Plaintiff also noted that Claimant continued to struggle with learning, applying her learning, planning ahead, and applying her knowledge to work settings. *Id.* (citing tr. at 614). Based on her reading difficulties and testing at the first and second percentile, Plaintiff avers that the ALJ erred in not finding a marked limitation in this functional domain. *Id.* (citing tr. at 450). For support, Plaintiff cited SSR 09-3p, which states that adolescents (age 12 to attainment of age 18) without an impairment can typically do the following:

• Continues to demonstrate learning in academic assignments (for example, in composition, during classroom discussion, and by school laboratory experiments).
• Applies learning in daily situations without assistance (for example, going to the store, getting a book from the library, or using public transportation).
• Comprehends and expresses simple and complex ideas using increasingly complex language in academic and daily living situations.
• Learns to apply knowledge in practical ways that will help in employment (for

13

example, carrying out instructions, completing a job application, or being interviewed by a potential employer).
• Plans ahead for future activities.
• Begins realistic occupational planning.

SSR 09-3p, at *6; *see* 20 C.F.R. §416.926a(g)(2)(v).

Plaintiff's contentions are without merit. First, Plaintiff, without any authority, claims that it is atypical for an adolescent to be interested in different types of careers, and she classifies a veterinarian and early childhood teacher as "diversely different occupations." ECF Dkt. #13 at 13. However, upon closer inspection of the May 11, 2017 IEP cited by Plaintiff, the notes say that Claimant expressed an interest in attending a local career center's animal management and care program because she wanted to become a veterinarian, as her preference. Tr. at 614. It also stated that she expressed an interest in becoming an early childhood education teacher. *Id.* Such notes indicate Claimant is planning ahead for a future career. It is not uncommon for adolescents to have interests in different career paths, nor does SSR 09-3p classify an adolescent interested in two different careers as being atypical or signs of a "marked" limitation in this domain. *See* SSR 09-3p. In addition, Plaintiff was employed for a limited time. The same IEP noted that, initially, Claimant "demonstrated above average work skills in Work Quality," and "average Problem Solving Skills." Tr. at 614. However, due to her absences, Claimant fell behind, did not demonstrate appropriate problem solving skills, and was ultimately fired from her position. *Id.* Additionally, Claimant completed an Employability Skills assessment on February 9, 2017, in which 20 out of 25 skills were rated to be from average to competitive and 5 out of 25 needed improvement. *Id.* Her Employability Skills assessment noted in her May 16, 2016 IEP rated her employability skills as mostly competitive with some being rated as good and none being rated average, needs improvement, or poor. *Id.* at 419.

Regarding Claimant's test scores, Plaintiff points to her May 16, 2016 ETR, which included her 6th grade Ohio Achievement (MAP) testing scores in which she tested in the first percentile in reading and the second percentile in math in Spring 2014. ECF Dkt. #13 at 14 (citing tr. at 450). Dr. Silberberg testified that these scores were more than two standard deviations below the mean. Tr. at 44. In contrast, this same ETR includes Claimant's full scale IQ score of 88, which Dr. Silberberg

testified is less than one standard deviation below the mean and is in the low average/below average area. Tr. at 44, 453. Having standardized test scores two standard deviations below the mean typically coincides with a "marked" limitation provided the child's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii) & (e)(4). In fact, the regulations state that SSA may find that a child does not have a "marked" limitation, even if the child's test scores are at the level to support a "marked" limitation, if other information, such as having a valid IQ score that supports less than a "marked" limitation. 20 C.F.R. § 416.926a(e)(4)(ii)(B). Although the MAP test scores are relevant, Defendant also correctly points out that they were administered before Claimant applied for SSI. ECF Dkt. #16 at 16. Accordingly, the ALJ adhered to the regulations and did not err in finding that Claimant had a less than marked limitation in this domain.

### 2. **Attending and Completing Tasks**

The domain of attending and completing tasks concerns how well a child is able to focus and maintain attention, how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h); SSR 09-4p, 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009). In her decision, the ALJ found that Claimant has less than marked limitation in the domain of attending and completing tasks. Tr. at 23. She noted that Plaintiff indicated in her function report, dated September 22, 2015, that Claimant was unable to keep busy, finish what she started, or complete chores, but would work on arts and crafts projects, and complete her homework on time. *Id.* (citing tr. at 191). The ALJ also mentioned that the consultative physical examiner noted that Claimant's attention span appeared somewhat immature for her age. *Id.* (citing tr. at 350). However, the IEPs dated March 2015 and May 2016 described Claimant as a good student and always prepared for class and always participating. *Id.* (citing tr. at 290, 418). The ALJ further cited to various treatment notes, rendered in various settings and that indicated a normal attention span and concentration. *Id.* (citing tr. at 327, 362, 373, 410). Additionally, the consultative psychological examiner noted that Claimant's

attention span and concentration was fairly average for age expectations. *Id.*[7] Three teachers reported in August 2015 that Claimant had no difficulties with attention, concentration, effort or participation. *Id.*[8] The ALJ noted that this finding is consistent with the testimony of the independent ME, Dr. Silberberg, "[a]lthough not wholly dispositive of the conclusion." *Id.* (citing tr. at 33-68).

Plaintiff argues that the ALJ erred when she failed to find Claimant had a marked limitation in the domain of attending and completing tasks. ECF Dkt. #13 at 14. For support, she cites to examples of limitations contained within SSR 09-4p, including a person who needs extra supervision to stay on task along with being unable to plan, manage time, or organize self in order to complete assignments or chores. *Id.* Plaintiff incorrectly notes that when Claimant tried working, she was fired, in part, because of her inability to plan her workload. *Id.* (citing tr. at 614). However, during the second quarter of her fall 2016 semester, Claimant was fired because of more frequent absences, falling behind on class work, and because she did not demonstrate appropriate problem solving skills. *E.g.*, tr. at 614. Plaintiff appears to be referring to Claimant's Employability Skills assessment from February 9, 2017, which found that her "Planning Workload" skill needed improvement and was below that of her peers. *Id.* Plaintiff concluded the ALJ erred "[b]ased on the testimony during the hearing and the school records," but besides citing to her firing from work, Plaintiff cited to no other specific evidence. ECF Dkt. #13 at 14. Without more, the Court finds that Plaintiff has failed to meet her burden of showing the ALJ committed reversible error regarding this domain.

### 3. **Interacting and Relating with Others**

The domain of interacting and relating with others concerns how well a child is able to initiate and sustain emotional connections with others, develop and use the language of her community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i); SSR 09-5p, 2009 WL 396026, at *2 (S.S.A. Feb. 17, 2009). In her decision, the ALJ found that Claimant has less than marked limitation in the

---

[7]The ALJ cited to Exhibit 9F, page 16, a nonexistent page. Tr. at 23. Defendant clarified that the evidence the ALJ referred to is contained in Exhibit 9F, page 6. ECF Dkt. #16 at 19 n.5; *see* tr. at 357.

[8]The ALJ cited to Exhibit 18F, page 35, a nonexistent page. Tr. at 23. Defendant clarified that the evidence the ALJ referred to is contained in Exhibit 13F, page 35. ECF Dkt. #16 at 18 n.4; *see* tr. at 450.

16

domain of interacting and relating with others. Tr. at 24. She noted that Plaintiff indicated in her function report, dated September 22, 2015, that Claimant did not have friends and could not make new friends, that she did not get along with her parents, adults, or siblings, but that she did play team sports and got along well with teachers. *Id.* (citing tr. at 189). The ALJ also mentioned that Claimant's school disciplinary record appeared confined to one episode of videotaping another student without permission and one episode of cutting class. *Id.* (citing tr. at 250). The consultative examiner noted that Claimant's social interaction appeared somewhat immature, but not aggressive or defiant. *Id.* (citing tr. at 357). Claimant's IEPs also indicated that she participated in intramural teams, Girl Scouts, Big Brothers/Sisters and Ski Club. *Id.* (citing tr. at 290). The ALJ also referenced various treatment notes that reported Claimant as jovial, pleasant, fun, and conversant, or with age appropriate social function and school behaviors. *Id.* (citing tr. at 332, 350, 531). The ALJ noted that this finding is consistent with the testimony of the independent ME, Dr. Silberberg, "[a]lthough not wholly dispositive of the conclusion." *Id.* (citing tr. at 33-68).

Plaintiff avers that the record supports a finding of a marked limitation in this domain. She contends that, based on the records submitted after the hearing, Claimant was having problems with anger. ECF Dkt. #13 at 14 (citing tr. at 604, 606). She also pointed out that Dr. Magleby, the consultative examiner, noted Claimant as exhibiting variable eye contact and socially immature behavior. *Id.*; Tr. at 355, 357. Citing SSR 09-5p, Plaintiff asserts that one of the important aspects in this domain is a child's ability to initiate and develop friendships with children of the same age. ECF Dkt. #13 at 14; *see* SSR 09-5p. She states that Claimant was unable to forge friendship, and cited to Dr. Magleby's examination and assessment for support. ECF Dkt. #13 at 14.

On January 12, 2016, consultative clinical neuropsychologist, Dr. Magleby, examined Claimant and offered his own functional assessment. Tr. at 352-58. Dr. Magleby found that Claimant's ability in the domain of interacting and relating to others was somewhat atypical compared to other typically-developing children of the same age, noting her variable eye contact and somewhat immature social behavior. *Id.* at 357. He found her to be cooperative and fairly pleasant during his exam and that her conversation was fairly age appropriate and topic appropriate. *Id.* He remarked that Claimant demonstrated listening skills and was not highly distracted during one to one

17

conversations. *Id.* He noted that her social relations with others such as family and peers had been variably impaired, based on Plaintiff's descriptions, including that Claimant did poorly with same-age peers "except those in her special ed class" as well as younger children, likely because such groups are similar to her level of functioning. *Id.* He further reported no disruptive behaviors, such as defiance, direct oppositionalism, or negative reaction to direction or redirection. *Id.*

The ALJ did consider Claimant's struggle to form friendships, citing Plaintiff's statements that Claimant did not have friends and could not make new friends. Tr. at 24 (citing tr. at 189). She also referenced Dr. Magleby's report and his observation that Claimant's social interaction appeared somewhat immature. *Id.* (citing tr. at 357). However, the ALJ cited to other evidence showing that Claimant was involved in clubs and team sports as well as various records reporting she got along well with teachers and was pleasant or had age appropriate social function. *Id.* Accordingly, the Court finds that the ALJ cited to substantial evidence and the ALJ did not err in finding a less than marked limitation in this domain.

### 4.     **Health and Physical Well-Being**

The domain of health and physical well-being concerns the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l); SSR 09-8p, 2009 WL 396030, at *2 (S.S.A. Feb. 17, 2009). In her decision, the ALJ found that Claimant has less than marked limitation in the domain of health and physical well-being. Tr. at 26. She noted that Claimant has a chronic medical condition, in the form of migraine headaches, requiring a regular regimen of prescription medications. *Id.* (citing tr. at 600). The ALJ stated that this fact alone would render this domain less than marked. *Id.* She went on to state that despite this, acute episodes appeared to recur infrequently, and her pediatric record was otherwise only significant for acute childhood illnesses, including rashes and the flu, which were readily resolved with standard treatments. *Id.* at 26-27 (citing tr. at 542). The ALJ noted that this finding is consistent with the testimony of the independent ME, Dr. Silberberg, "[a]lthough not wholly dispositive of the conclusion." *Id.* (citing tr. at 33-68).

18

Plaintiff contends that the ALJ erred in affording less than marked limitation in this domain because Claimant had multiple physical and psychological problems that interfered with her ability to act in an age appropriate manner. ECF Dkt. #13 at 14-15. These problems include "school and anger problems," migraines and resulting vertigo and dizziness, and depression and bipolar problems. *Id.* at 15 (citing tr. at 325-31, 342-45, 363-406, 408-15, 486-91, 498-502, 545-60, 591-96, 599-601, 603-09).

The ALJ included vertigo and migraine headaches as being severe impairments at step two of the sequential process. Tr. at 14. The ALJ recognized that Claimant was diagnosed with vertigo on November 24, 2015 and that it was assessed as a symptom of her migraine headaches, with which she was diagnosed on December 3, 2014. *Id.* at 17 (citing tr. at 285, 328). The ALJ stated that the actual frequency of Claimant's headaches were not readily discernible from the record because Plaintiff variously reported them as recurring at the rate of two or three times per week and once per week. *Id.* at 18 (citing tr. at 284, 408). The ALJ also considered that Claimant received focused treatment for her headaches on only two occasions: once in November of 2016 when she fainted during school and once in September 2016 when she required an IV infusion of Depakoate. *Id.* (citing tr. at 490, 498); *see* tr. at 487. The ALJ noted that Claimant followed a regimen of medications intended to address these impairments, said to be effective, but she did not have medications discernibly addressed to vertigo. *Id.* (citing tr. at 528, 600).

Plaintiff cited to several records noting issues with migraines, vertigo/dizziness, and bipolar disorder. ECF Dkt. #13 at 15 (citing tr. at 325-31, 342-45, 363-406, 408-15, 486-91, 498-502, 545-60, 591-96, 599-601, 603-09). However, several of these records also indicate that Claimant was doing well on her bipolar medication, Equestro, and reported no side effects, and other records report mild or no depressive symptoms. *See* tr. at 360, 366, 376, 545, 548, 552, 556. Some records discussed Claimant as having mood swings or being irritable, but these were also typically mild or not present. Tr. at 360, 366, 545, 548, 552, 556.

Plaintiff also appears to rely on the fact that Dr. Silberberg did not see the post-hearing counseling records, Exhibit 24F, which show Claimant had problems with anger. ECF Dkt. #13 at

15; ECF Dkt. #17 at 3-4. However, Dr. Silberberg did have access to all of the other records cited by Plaintiff, and Dr. Silberberg, like the ALJ, found vertigo and migraines to be severe impairments. Tr. at 14, 41. Plaintiff has not shown how the July 2017 counseling records detailing Claimant's anger have any impact on her health and physical well-being. In fact, although these records show Claimant had problems with feelings of anger, they also note that she was able to list what upset her and work to come up with positive solutions with her counselor to defuse some of the sources of her anger. *Id.* at 604. Accordingly, the Court finds that the ALJ did not err and provided substantial evidence to support her opinion regarding this domain.

## VI.  **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.

DATE: September 23, 2019                    */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE